STATE OF IOWA, Appellee, v. M. V. HENDERSON, Appellant.

No. 39500.

Septmember 22, 1930.

Rehearing Denied April 10, 1931.

John Fletcher, Attorney General, Neill Garrett, Assistant Attorney General, John A. Senneff, E. H. Estey, Leon R. Layton, for appellee.

Garfield E. Breese, E. R. O'Brien, for appellant.

Albert, J.—The First State Bank of Hawkeye was incorporated under the laws of the state of Iowa, doing a general banking business. It closed its doors April 7, 1927, was taken over by the state banking department and its assets liquidated by a receiver. One S. H. Bevins was president, and defendant, M. V. Henderson, cashier, for a number of years prior to its closing.

Evidence was introduced tending to show that the defendant cashier received a certain deposit before the bank closed, knowing that it was insolvent. There is no dispute that the deposit was made as charged prior to the time of the closing of the bank, but to make a case, the State is required to prove beyond a reasonable doubt, first, that the bank was in fact insolvent at the time this deposit was received; and second, that when Henderson received this deposit, he knew the bank was insolvent.

To prove the first proposition charged, evidence was taken as to the value of the assets of the bank. Many exhibits of various kinds and descriptions were introduced, among them being what is designated in the record as "No. 169" which is an

unsigned statement or report made by an examiner of the state banking department, and the admission of this exhibit in evidence is one of the principal questions discussed on this appeal. Counsel for the State insist that it was admitted without objection. To settle this question, we have investigated the record and find that such assertion is a mistake. While at the instant this particular exhibit was offered, the record does not show an exception, yet long prior to this, a general objection was made to this line of testimony, and it was stipulated by counsel, in substance, that this objection should stand as to all testimony of this character. We think, under the record, this is sufficient to make the objection applicable to Exhibit 169. Further, when counsel for the State offered to read Exhibit 169, the objection then made was timely under the peculiar record in this case, and the court erred in holding that it was too late.

As to this exhibit, while the bank closed on April 7, 1927, and the deposit on which the action is based was made shortly before its closing, Exhibit 169 was made a little more than one year prior to its closing. It covers some 26 pages of the printed abstract, and is too voluminous to be set out in full. Summarized it contains: First, a list of what is marked "Excessive Loans" consisting of some four items; next, a list designated "Illegal Assets," consisting of eight items; next, a statement, separately scheduled, of $384,381.24, designated "Objectionable;" also, a list or schedule of items amounting to $60,889.89, marked "Doubtful;" another list of $36,984.98, marked "Loss;" a statement, $11,238.20, representing "Customers' Bonds Left for Safekeeping Which Have been Sold by the Bank." Then follows what are designated "Observations" as follows:

"Shortage in bills receivable and cash.

Books out of balance.

Reserve short.

Cash items and overdrafts excessive and objectionable.

Appropriation of customers' bonds.

Large amount of past due paper.

No financial statements. Information in some cases does not agree with that given at other examinations.

Illegal dividends paid.

Directors not elected by ballot, and records do not show all took oath of office.

Interest being added to large questionable lines.

Illegal assets placed here by directors, and apparent disregard for ruling of this department, and the law.

Required reports to banking department incorrect.

Cashier disagrees with examiner on correctness of his earnings and dividend report. Gross income includes that credited to other real estate. Total expense does not agree with amount shown on books.

Directors' meeting not held as required.''

Remarks: ''* * * Major part of criticisms have been called to their attention before, and conditions getting worse right along.''

Then follow many pages of comments on loans and discounts, marking them ''objectionable, doubtful or loss'' and comments on the same, some of which are marked: ''Illegal;'' ''Maker bankrupt;'' ''Admitted Loss;'' ''Very Objectionable;'' ''Loss;'' ''Illegal Advance,'' etc.

It is quite evident from the above summary of this report that in most instances it consists wholly of the opinion of the maker thereof in relation to the matters therein set out. In short, the major portion of the report is the opinion of an employee of the state banking department in relation to the matters in this bank at the time it bears date, to wit, over a year before the closing of the bank. That such testimony would not be admissible on the question of the insolvency of the bank on the 7th day of April, 1927, is too apparent to demand discussion. In fact the State does not so insist, but does insist that this report was called to the attention of the defendant, that he wrote to the banking department with reference thereto, but the letter shows that he denied the accuracy of the report. The State claims that it was admissible as a circumstance to be taken into consideration by the jury in determining the question of whether Henderson knew of the insolvency of the bank at the time the deposit was made. With this contention, the majority of this court do not agree. They do agree, however, on the proposition that the report was not admissible for any purpose; that it consisted purely of the opinions of the maker thereof; and was im-

148

material, incompetent, and purely hearsay testimony and not admissible for any purpose. A simple reading of the above summary of the report shows that its contents in the hands of a layman would be highly dangerous, poisonous, and prejudicial to the rights of the defendant.

The court attempted to limit the purpose of the introduction of this exhibit by an instruction, which instruction is excepted to and urged as error. But having reached the conclusion that the exhibit was not admissible for any purpose, we need not stop to discuss the instruction as its giving was necessarily erroneous.

█ In the trial of the case, the State, in an effort to show the insolvency of the bank, showed that a number of bills receivable held by the bank were signed by persons who, prior to the closing of the bank, had gone through bankruptcy, and certain copies of the bankruptcy proceedings of these parties in Federal court were received in evidence, over objection. We have inspected the same and reach the conclusion that where the bills receivable in question, held by the bank, were scheduled by the bankrupt and he was subsequently discharged, these records were admissible as bearing upon the worthlessness of the paper of the bankrupt held by the bank.

█ Another objection made is lodged against the argument made to the jury on behalf of the State. We have searched the record in vain, however, for any objection or exception thereto and the same is not covered by any ground in the motion for a new trial, and, therefore, is not before us for consideration. We might say in passing, however, that as to the part of the argument of the State now objected to by the defendant, it probably would be wise to omit the same on a re-argument of the case.

Certain witnesses were permitted to give opinions as to the value of various assets of personal property and real estate owned by the bank, which were objected to on the ground that the witnesses did not show themselves qualified. While the qualification of some of these witnesses was very weak, we would not, for this alone, feel warranted in reversing, but at the same time a court should be careful to see that witnesses giving estimates of value are properly qualified before permitting them to fix values.

This disposes of all of the material errors on which the de-

fendant relies. For the reasons heretofore expressed, this case is—Reversed.

EVANS, FAVILLE, WAGNER, and GRIMM, JJ., concur.